657 F.2d 1059
 216 U.S.P.Q. 376, 1981 Copr.L.Dec. P 25,309
 KAMAR INTERNATIONAL, INC., a corporation, and Kamar, Inc., a
corporation, Plaintiffs-Appellants,
v.
RUSS BERRIE AND CO., a corporation Sol Levy, an individual,
and Russ Berrie and Co. West, Inc., a corporation,
Defendants-Appellees.
 No. 79-3666.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 9, 1981.
Decided Sept. 28, 1981.
 
 Joseph R. Evanns, Herzig & Walsh, Inc., Beverly Hills, Cal., for plaintiffs-appellants.
 Michael A. Painter, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN and SKOPIL, Circuit Judges, and SOLOMON,* District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Kamar, Inc. appeals from a judgment of the district court finding Kamar's purported copyrights of stuffed toy animals invalid and not infringed and finding no unfair competition or Lanham Act violation.
 
 
 2
 Both Kamar, Inc. and Russ Berrie, Co. sell stuffed toy animals. Kamar's toys are copyrighted as "soft sculptures" and are manufactured by Korean subcontractors. The subcontractors take Kamar's designs and make stuffed animals from them, affixing Kamar's copyright notice and distinctive logo to each completed toy.
 
 
 3
 Berrie's stuffed animals are also copyrighted, but Berrie purchases them directly from Korean manufacturers. Three of Berrie's Korean manufacturers, (Young Il Inc., Suck Kyung, and Won Jeung), were previously employed by Kamar to manufacture Kamar's stuffed animals.I. The Validity of the Copyright.
 
 
 4
 A. "The Copyrightability of Stuffed Animals"
 
 
 5
 This court has said that the prerequisites for copyright registration are minimal:
 
 
 6
 "... The work offered for registration need not be new, but only original, i. e., the product of the registrant ...
 
 
 7
 ' "Original" in reference to a copyright work means that the particular work "owes its origin" to the "author." No large measure of novelty is required. * * * All that is needed to satisfy both the Constitution and the statute is that the "author" contributed something more than a "merely trivial" variation, recognizably "his own." ....' "
 
 
 8
 Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1163 n.5 (9th Cir. 1977) (quoting Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 102-03 (2d Cir. 1951).
 
 
 9
 Berrie contends that because stuffed toy animals are widely available to manufacturers like himself, and that because Kamar's concepts of toy animals were taken from the public domain, Kamar's stuffed animals are not copyrightable. The district judge agreed and adopted Berrie's proposed findings to that effect.
 
 
 10
 In order to support its finding that the animals were not copyrightable, the court would have had to find that Kamar's stuffed animals lack originality. See id. Nowhere, however, is the word originality used by either Berrie or the trial court. There are no factual findings denying that Kamar's toys are original. The question does not appear to have been addressed by the district court. This omission seems unusual in view of the truism that originality is the sine qua non of copyrightability. All we have are two factual findings by the court; one of which says that (presumably all) stuffed animals are in the public domain. The other says that Kamar's toys were taken from the public domain.
 
 
 11
 Such findings do not establish lack of originality:
 
 
 12
 "(T)he mere fact that plaintiff used a matter in the public domain does not in and of itself preclude a finding of originality, since plaintiff may have added unique features to the matter so as to render it copyrightable ...." R. Dakin & Co. v. A & L Novelty Co., Inc., 444 F.Supp. 1080, 1083-84 (E.D.N.Y.1978).
 
 
 13
 See L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir.) (en banc), cert. denied, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (the use of matters in the public domain does not preclude a finding of originality). Therefore, without a valid finding of lack of originality, the trial court could not conclude that Kamar's "soft sculptures" were not copyrightable because Kamar's concept of toy animals was taken from the public domain.
 
 
 14
 B. "The Copyrightability of Realistic Depictions of Animals"
 
 
 15
 Berrie makes the novel contention that realistic depictions of live animals are not copyrightable. The district court agreed and instructed Berrie to prepare findings to that effect. These findings are actually conclusions of law, and they are erroneous.
 
 
 16
 We find no authority for Berrie's proposition. Anyone can copyright anything, if he adds something original to its expression. 1 Nimmer on Copyright, Chpt. 2 (1981). The cases cited by Berrie and the court below to the contrary, are not in point. Indeed, the very contention urged has been expressly rejected. "The mere fact that ... (a stuffed toy chimp is) based on a live model does not deprive (him) ... of the necessary amount of originality." Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955); see also, Dollcraft Industries, Ltd. v. Well-Made Toy Mfg., 479 F.Supp. 1105 (E.D.N.Y.1978) (stuffed toy lambs and bunnies); R. Dakin & Co. v. A & L Novelty Co., Inc., supra (stuffed toy fish, frogs, and monkeys). Kamar's copyright cannot be invalidated on this ground.
 
 C. Improper Notice
 
 17
 Neither can the copyright be invalidated for lack of proper notice. Berrie argues that because pictures of the copyrighted animals appeared in catalogues that did not contain a copyright notice, the animals were thrust into the public domain. He cites as authority 17 U.S.C. § 10 (1909 Copyright Act).[1] Section 10 requires that a notice of copyright be affixed "to each copy (of the work) thereof published or offered for sale in the United States by the authority of the copyright proprietor...." The argument misses the point of § 10.
 
 
 18
 Kamar's catalogue pictures of its wares are not "copies" of the work within the meaning of § 10. Under the 1909 Copyright Act, " '(a) copy is that which comes so near to the original as to give every person seeing it the idea created by the original.' ... (It is) a tangible thing ... the publication and duplication of which it is the purpose of the statute to protect ...." White-Smith Music Co. v. Apollo Co., 209 U.S. 1, 17, 28 S.Ct. 319, 323, 52 L.Ed. 655 (1908) (Congress implicitly adopted this definition in the 1909 Copyright Act.) See 1 Nimmer on Copyright § 2.03(B) at 2-29 (1981).
 
 
 19
 In this case, the catalogue pictures are not copies of what was copyrightable in Kamar's work. That which was original, and copyrightable was the special texture and design of the stuffed animals. Photographs of the soft sculptures do not give viewers the idea created by the original; nor are the pictures the tangible things, the reproduction of which it is the purpose of the statute to protect. Distributing uncopyrighted pictures of the toys does not, therefore, invalidate Kamar's copyright. Berrie's point on this issue is not well taken. Cf. 1 Nimmer on Copyright, § 2.18(H)(2) at 2-211 (1981) (three-dimensional copies of copyrighted illustrations do not constitute infringements).
 
 
 20
 II. Infringement.
 
 
 21
 Infringement is established by copying. Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977). Because, however, the act of copying is rarely witnessed, copying is ordinarily established indirectly. The plaintiff demonstrates that the defendant had access to the copyrighted items, and that the defendant's product is substantially similar to plaintiffs' work. Once this is done, the burden shifts to the defendant to prove his work was not copied, but independently created. See generally, 3 Nimmer on Copyright, Chpt. 13 (1981).
 
 
 22
 Berrie contends he had no access to Kamar's work, and that his stuffed animals are not substantially similar to Kamar's toy animals. Thus, he argues, even if Kamar's copyrights are valid, he has not infringed them. The district court agreed. The court misconceived the effect of the evidence.
 
 
 23
 In one finding, the court "found" that Berrie had no access to any of Kamar's stuffed toys. Yet in Finding 17, the court found that Berrie did business with the same Korean stuffed animal manufacturers employed by Kamar to make Kamar's stuffed animals. Under the cases, this evidence alone demonstrates access. Proof of access requires only "an opportunity to view or to copy plaintiff's work." Sid & Marty Krofft Television v. McDonald's Corp., supra, at 1172. And "evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant...." 3 Nimmer on Copyright, § 13.02(A) at 13-11 (1981), citing DeAcosta v. Brown, 146 F.2d 408 (2d Cir. 1944), cert. denied, 325 U.S. 862, 65 S.Ct. 1197, 89 L.Ed. 1983 (1945). The court was, therefore, in error in failing to shift to Berrie the burden of proof.
 
 
 24
 The court failed to find similarity between Berrie and Kamar's stuffed toy animals. The court used too strict a test. The test in this circuit for substantial similarity is the two-part test propounded in Sid & Marty Krofft Television, supra, at 1163-64. Professor Nimmer explains it correctly as follows:
 
 
 25
 "Under Krofft there are ... two steps in the analytic process. First, there is the issue of whether there is substantial similarity as to the 'general ideas' contained in the two works. This is to be resolved by what the Krofft court labels the 'extrinsic test,' in that this determination turns 'not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.' These criteria are said to include not only 'the subject matter, and the setting for the subject,' which do go to the issue of idea similarity, but also (to) ... 'the type of artwork involved, (and) the materials used.' In applying the extrinsic test the Krofft court concluded that 'analytic dissection and expert testimony are appropriate.' Having found such idea similarity, the second step in the analytic process requires that the trier of fact then decide 'whether there is substantial similarity in the expressions of the ideas so as to constitute infringement.' This is to be determined by what Krofft labels the 'intrinsic test,' in that it depends 'on the response of the ordinary reasonable person.' In applying the intrinsic test, 'analytic dissection and expert testimony' are said to be 'not appropriate....' " 3 Nimmer on Copyright, § 13.03(E) at 13-49 (1981).
 
 
 26
 The court below made no mention of Krofft, and nowhere does it employ the two-part test Krofft mandates. No findings of fact can be so construed. The only finding the court made on similarity indicates that the court used the analytic dissection method condemned by Krofft, or rather permitted by Krofft for the "extrinsic" test part only.
 
 
 27
 The cause must be remanded to the trial court for a specific decision upon the validity of the copyright, using the standards for validity described above; and for a reexamination of the question of infringement based upon the Krofft standards.
 
 
 28
 III. The Lanham Act Issue.
 
 
 29
 Kamar's second cause of action was brought under the Lanham Act, which is § 43(a) of the Trademark Act of July 5, 1946. See 15 U.S.C. § 1125(a). Kamar alleged that:
 
 
 30
 "Since on or before July 1977, defendants jointly and severally acquired stuffed animals made and sold by plaintiffs under the copyrights annexed hereto ... and cut the plaintiffs' labels off of them or made exact copies of them and offered them for sale and sold them at gift fairs in Los Angeles, California, within the jurisdiction of this Court and elsewhere. Defendants threaten to continue said infringing, unfair practices, and false designation or (sic) origin, until and unless enjoined therefrom by this Court."
 
 
 31
 At the conclusion of the trial, the court concluded that the "(d)efendants have committed no acts which violate any provisions of the United States Trademark Act...." and that "(d)efendants have committed no acts which constitute unfair competition with plaintiffs." The findings which support these conclusions state that "(t)he Court finds that the testimony and exhibits illustrate the existence of one or more of the following significant differences in visual characteristics between respective pairs of plaintiffs' and defendants' soft sculptures...." and that "(d)efendants did not remove any of plaintiffs' labels from plaintiffs' purportedly copyrighted soft sculptures and market same upon the representation that the soft sculptures were those of defendants."
 
 
 32
 In reviewing the district court's findings, we must sustain them unless they are clearly erroneous. Fed.R.Civ.P. 52(a). Both the testimony and the exhibits support a finding that the defendants did not make exact copies of Kamar's toys; there were at least insignificant differences in the respective "soft sculptures."[2] Nor was the finding that Kamar had not proved that Berrie cut labels from Kamar's toys clearly erroneous. Thus, because Kamar did not prove either of its allegations (1) that Berrie cut out Kamar's labels; or (2) that Berrie sold exact copies of Kamar's toys the district court correctly found that Kamar had not prevailed on its Lanham Act claim.
 
 
 33
 Kamar's arguments on appeal might be construed to say that because Berrie distributed under the Berrie label soft sculptures which were "substantially similar" to Kamar's, Berrie violated the Lanham Act. These arguments were not made to the court below. Therefore, we will not consider them. See, e. g., Singleton v. Wulff, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 2870, 49 L.Ed.2d 826 (1976).[3] We express no opinion whether such an allegation would adequately state a claim for violation of the Lanham Act. Cf. Smith v. Montoro, 648 F.2d 602, 606-07 (9th Cir. 1981) (holding that a cause of action exists for express passing off where the plaintiff's mark is actually removed from his product).
 
 
 34
 Accordingly, the judgment is affirmed with respect to the Lanham Act count, and vacated and remanded with respect to the copyright cause of action.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The 1909 Act rather than the 1976 Copyright Act applies in this case because the matters herein alleged occurred prior to the 1976 Act coming into force
 
 
 [2]
 We have considered only whether the district court's finding that Kamar did not prove that Berrie made exact copies was clearly erroneous. We have not reviewed whether those differences are "significant" because the trier of fact did not employ the correct test for determining similarity
 
 
 [3]
 This is not a case where an issue not raised by the pleadings was tried by the express or implied consent of the parties. See Fed.R.Civ.P. 15(b); Dunn v. Trans World Airlines, Inc., 589 F.2d 408, 412-13 (9th Cir. 1978). Berrie did not expressly or impliedly consent to trial of such a question. None of the proceedings below put Berrie on notice that such a theory was being asserted. We therefore do not consider it. See Gonzales v. United States, 589 F.2d 465, 469-70 (9th Cir. 1979); R. A. Pohl Const. Co. v. Marshall, 640 F.2d 266, 267 (10th Cir. 1981); Mineral Industries Etc. v. Occupational Safety, 639 F.2d 1289, 1293 (5th Cir. 1981); Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1086 (2nd Cir. 1977)