**SUPERIOR FORM BUILDERS, INC. Plaintiff–Appellee,**

v.

**DAN CHASE TAXIDERMY SUPPLY COMPANY, INCORPORATED; Dan Chase, Defendants–Appellants,**

**and**

**Lilly CHASE, Defendant.**

No. 94–2139.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1995.

Decided Jan. 29, 1996.

**ARGUED:** Earle Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Richmond, Virginia, for Appellants. Gregory Albert Giordano, Shuttleworth, Ruloff, Giordano & Kahle, P.C., Virginia Beach, Virginia, for Appellee. **ON BRIEF:** Amy T. Holt, Frank G. LaPrade, III, McGuire, Woods, Battle & Boothe, Richmond, Virginia, for Appellants. Lawrence H. Woodward, Jr., Shuttleworth, Ruloff, Giordano & Kahle, P.C., Virginia Beach, Virginia; F. Prince Butler, Griffin, Butler, Whisenhunt & Kurtossy, Arlington, Virginia, for Appellee.

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.

## OPINION

NIEMEYER, Circuit Judge:

The principal issue presented in this appeal is whether animal mannequins used by taxidermists to mount animal skins are copyrightable. The controversy centers around whether these mannequins are "useful articles" or "sculptural works" within the meaning of the Copyright Act, and if useful, whether their sculptural features are conceptually separable and thus copyrightable. We also must decide evidentiary and damage issues arising from the trial in the district court.

Because these animal mannequins were designed to portray the appearance of animals through artistic features introduced by the author in their creation, we hold that they are not "useful articles" as defined in the Copyright Act and that therefore copyright protection is available for them. Because we also reject the assignments of error attributed to the evidentiary and damage rulings, we affirm.

## I

Superior Form Builders, Inc. ("Superior Form"), through its owner and president, Tommy Knight, creates and markets animal mannequins for mounting animal skins. Employing traditional sculpturing techniques, Knight creates the mannequins, using casts of actual animal carcasses as models. He begins by applying clay to an armature made of wood and actual animal bones and shaping the desired animal in a particular pose and with precise anatomical features. From the clay sculpture, he makes a fiberglass mold and uses it to produce polyurethane forms, i.e. the animal mannequins. The mannequins contain special receptacles for artificial eyes,"ear butts" for the proper placement of animal ears, and pre-molded features for the application of artificial teeth.

Knight considers his mannequins to be a form of artistic expression and has entered several of his unadorned mannequins in art contests. Some have won awards.

Knight registered each of his mannequins with the United States Copyright Office and then assigned the copyrights to his company, Superior Form. Superior Form issued its first catalog with Knight's mannequins in December 1991.

In January 1992, Dan Chase Taxidermy Supply Co., Inc. ("Chase Taxidermy"), a Superior Form competitor, ordered four mannequins from Superior Form's catalog: an otter, two raccoons in different poses, and a deer. Dan Chase, the president and chief executive officer of Chase Taxidermy, used the name of a fictional company in placing the order because he feared that Superior Form would not send the forms otherwise. Chase Taxidermy also used pseudonyms in the past to obtain animal mannequins from other companies.

Chase Taxidermy used the four Superior Form mannequins to develop its own forms, making few or no modifications. After registering the mannequins as its own with the Copyright Office, Chase Taxidermy offered these mannequins for sale in its 1992–93 catalog and in each edition thereafter, with its own copyright notice attached.

Chase Taxidermy advertises that it is the largest taxidermy supply company in the world and offers over 3,000 forms for sale through its catalog. Although Chase Taxidermy developed many of its forms from competitors' mannequins, it represented in its initial catalogs that "each manikin in this catalog is legally copyrighted according to the law of the United States of America and any infringement will be vigorously prosecuted." In later catalogs, it warned, "Beware of looka-likes," and explained:

> Practically everyone recognizes the fact that we are being copied by the desperate "copy cats" working overtime in an attempt to deceive the public and violate the rights of others.

In September 1993, Superior Form filed suit against Chase Taxidermy and Dan Chase alleging that the defendants (hereinafter "Chase") had infringed Superior Form's copyrights on the four animal mannequins

that Chase had purchased from Superior Form. Lilly Chase, Dan Chase's wife, was also named a defendant, but she was subsequently dismissed because the court lacked personal jurisdiction over her. Superior Form's complaint sought equitable relief, statutory damages of $400,000, and attorneys fees and costs. Chase moved for summary judgment on the ground that Superior Form's mannequins are not copyrightable because they are "useful articles" that do not have separable and independent sculptural features. The district court denied the motion, ruling as a matter of law that the taxidermy mannequins are copyrightable since they have no utilitarian function other than portraying the appearance of an animal and that such a portrayal is "unquestionably a permanent artistic object."

The case proceeded to trial before a jury on the issues of whether Chase infringed Superior Form's copyrights and whether the infringement was willful. The jury returned a special verdict, finding in favor of Superior Form on all issues and awarding Superior Form the maximum statutory damages of $100,000 on each of the four works that Chase had copied. The district court denied Chase's motion for a new trial and, following a hearing, awarded Superior Form $74,104.50 in attorneys fees and costs. The court found that Chase had been involved in similar infringement suits for years and that only "substantial awards of damages as well as attorney's fees will deter Mr. Chase from continuing this willful and outrageous conduct." From the judgment entered, Chase appeals.

## II

We turn first to the question of whether the Copyright Act affords Superior Form copyright protection for its animal mannequins.

The Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression," including "sculptural works." 17 U.S.C. § 102(a)(5). Copyright protection, which gives authors the exclusive right to use, publish, and sell their work, is intended "to promote the Progress of Science and useful Arts." *See* U.S. Const. art. I, § 8, cl. 8.

The copyright is the author's right to prohibit the copying of the author's intellectual invention, i.e. the originality of an author's expression. Since individual expressions of ideas inevitably vary, the originality inherent in each author's expression is the essence of the proprietary interest protected. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346, 111 S.Ct. 1282, 1288, 113 L.Ed.2d 358 (1991). Originality requires "independent creation plus a modicum of creativity." *Id.* Copyright protection is available even if the quantum of originality is minimal. *Id.* at 348, 111 S.Ct. at 1289.

But the public has a corollary interest against any grant of an undeserving monopoly. Thus, while the Copyright Act affords protection for originality inherent in authorship, it retains in the public domain the right to discover facts and exchange ideas freely. Thus, copyright protection does not extend to ideas or facts, *see* 17 U.S.C. § 102(b), even if such facts were discovered as the product of long and hard work. A copyright "rewards originality, not effort." *Feist,* 499 U.S. at 364, 111 S.Ct. at 1297. It follows, therefore, that while authors are free to adopt ideas, narrate facts, and copy an original, they are not free "to copy the copy." *Bleistein v. Donaldson Lith. Co.*, 188 U.S. 239, 249, 23 S.Ct. 298, 299, 47 L.Ed. 460 (1903).

Accordingly, an animal sculpture, even if realistic, is copyrightable as long as the work represents the author's creative effort. *See, e.g., Kamar Int'l, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059 (9th Cir.1981). Several sculptors may copy a deer, even the same deer, in creating a sculpture, and each may obtain copyright protection for his or her own expression of the original. *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir.1987). Such individual creative efforts inevitably possess some degree of originality. But when an author copies another author's work, he appropriates that author's propriety interest in the work, the author's individual expression.

If, however, a person makes a casting rather than a sculpture of the deer, the effort introduces no originality into the product. Indeed, in such a case, the idea in the original and its expression in the casting are identical and inseparable because the mechanical process allowed for no possibility of originality, which is inherent in authorship. In such cases, copyright protection is not available. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971) (holding that where idea and expression are indistinguishable, copying the expression would not be barred by copyright registration).

In this case, no one has seriously disputed the fact that Knight individually created sculptural works and thereby introduced originality into them. Even though his works realistically depict animals, they are not mere "castings" of animal carcasses. To the contrary, Knight constructs armatures to which he applies clay, forming what becomes clay sculptures of animals in particular poses. Chase's counsel conceded at trial that Knight formed his sculptures "from scratch" and that therefore there was some originality in each of his works. These clay sculptures were Knight's tangible expressions of animals and thus contained originality, which is required as a condition for obtaining copyright protection. *See Feist*, 499 U.S. at 346, 111 S.Ct. at 1288.

While Chase offers no serious challenge to the originality of Knight's work, he does contend that by using the sculpted forms to mount animal skins, Superior Form's mannequins serve a utilitarian purpose and therefore are not copyrightable. As Chase argues, the mannequin is "one of the tools of a taxidermist as utilitarian as the glue, clay, glass and other materials used in mounting an animal." To support his contention, Chase relies on a Second Circuit case holding that human mannequins used to display clothes for commercial sale are not copyrightable. *See Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411 (2d Cir. 1985).

Superior Form responds that its mannequins are in fact "sculptural works," not "useful articles," within the meaning of the Copyright Act. Alternatively, it argues that any utilitarian aspect of the mannequins is conceptually separable from their sculptural features. Superior Form analogizes its mannequins to the mannequins the Ninth Circuit has recognized as copyrightable. *See Rachel*, 831 F.2d at 1507 (recognizing that animal mannequins painted, fitted with artificial eyes, and covered with flocking are copyrightable); *Kamar Int'l*, 657 F.2d at 1061, (holding that stuffed toy animals are copyrightable).

The Copyright Act excludes from copyright protection any "useful article," defining such an article as "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. A "sculptural work," however, does not lose its copyrightability even if it has utilitarian aspects so long as the "sculptural features . . . can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural work"). When the sculptural features and utilitarian aspects are not separable, the work is not copyrightable, although it may be protectable on a more limited basis with a design patent. Thus, the industrial design of a unique, aesthetically pleasing chair cannot be separated from the chair's utilitarian function and, therefore, is not subject to copyright protection. But the design of a statue portraying a dancer, created merely for its expressive form, continues to be copyrightable even when it has been included as the base of a lamp which is utilitarian. *See Mazer v. Stein*, 347 U.S. 201, 205, 74 S.Ct. 460, 463, 98 L.Ed. 630 (1954). The objective in designing a chair is to create a utilitarian object, albeit an aesthetically pleasing one; the objective in creating a statue of a dancer is to express the idea of a dancer. As the Act makes the distinction, a useful article has as its function something more than portraying its own appearance. *See* 17 U.S.C. § 101 (defining "useful article").

In this case, Chase argues that Superior Form's animal mannequins have the utilitarian function of acting as mounts for animal skins for display. But this argument over-

looks that which distinguishes mannequins from ordinary plastic foam pellet animal stuffing: A mannequin provides the creative form and expression of the ultimate animal display, whereas pellets do not. Even though covered with a skin, the mannequin is not invisible but conspicuous in the final display. The angle of the animal's head, the juxtaposition of its body parts, and the shape of the body parts in the final display is little more than the portrayal of the underlying mannequin. Indeed, the mannequin can even portray the intensity of flexed body parts, or it can reveal the grace of relaxed ones. None of these expressive aspects of a mannequin is lost by covering the mannequin with a skin. Thus, any utilitarian aspect of the mannequin exists "merely to portray the appearance" of the animal. *See* 17 U.S.C. § 101.

The very same considerations that distinguish useful articles from sculptural works thus qualify mannequins designed to display trophy animals for copyright protection; the author's artistic portrayal of the animal form survives the final assemblage. It is the portrayal of the animal's body expression given by the mannequin that is thus protectable under the Copyright Act. *See Rachel,* 831 F.2d at 1507; *cf. Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663 (3rd Cir. 1990) (finding nose mask for humans copyrightable because its sole function is to portray appearance of article); *Kamar Int'l,* 657 F.2d at 1061. We therefore agree with the district court in this case because "the usefulness of the forms is their portrayal of the appearance of animals." The mannequin forms "by definition are not useful articles."

To the extent that an argument can be made that the mannequins in this case perform a utilitarian function—other than portraying themselves—by supporting the mounted skins, we believe the function to be conceptually separable from the works' sculptural features. *See Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.,* 834 F.2d 1142, 1145 (2d Cir.1987) ("Where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists"); *Kieselstein–Cord v. Accessories by*

*Pearl, Inc.,* 632 F.2d 989, 993 (2d Cir.1980) (finding sculptural element of belt buckle conceptually separable from utilitarian function).

We are not persuaded that the decision in *Carol Barnhart* compels a different result. In that case, the Second Circuit concluded that human mannequins used to display clothes for commercial sale were aesthetically pleasing articles of industrial design and were not designed for portraying themselves:

> [T]he aesthetic and artistic features of the Barnhart forms are inseparable from the forms' use as utilitarian articles.... While [sculptural techniques in creating the forms] may indicate that the forms are "aesthetically satisfying and valuable," it is insufficient to show that the forms possess aesthetic or artistic features that are physically or conceptually separable from the forms' use as utilitarian objects to display clothes.

773 F.2d at 418. The court did not find that the author fixed a mode of expression in a tangible form *for the purpose of displaying or portraying the article.*

The human mannequins considered in *Carol Barnhart* are quite unlike Standard Form's animal mannequins, which are intended to give body expression to the final displays and to constitute a permanent portrayal of the animal. While we believe that *Carol Barnhart* is thus distinguishable in significant respects, to the extent that it might be construed as leaving unprotected an author's mode of expression fixed in a tangible medium for the purpose of portraying that expression, we would disagree with its holding. The court in *Mazer* articulates the relevant distinction:

> The dichotomy of protection ... is ... art for the copyright and the invention of original and ornamental design for design patents. We find nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration.

347 U.S. at 218, 74 S.Ct. at 471.

Accordingly, we hold that the originality of expression fixed in Superior Form's plastic

mannequins, used for mounting animal skins for permanent display, is protectable as a sculptural work under the Copyright Act.

## III

■ Chase also contends that a new trial is required because the district court erred in its evidentiary rulings and jury instructions. We review the district court's evidentiary rulings for abuse of discretion and its jury instructions *de novo*.

■ Chase first argues that the district court abused its discretion by refusing to allow testimony that Knight's work was not original because he had copied significant portions of his mannequins from preexisting works. But Chase's counsel admitted at trial that Knight had constructed his mannequins "from scratch," using as models plaster masks of actual animals. By observing nature in the form of the masks, Knight created clay models with his own hands, and from these models he made the mannequins. Even though Knight had sculpted the animal forms himself, the district court permitted Chase to introduce evidence that Superior Form's mannequins were not entirely original and allowed Chase to argue that he had copied only unoriginal aspects of Superior Form's mannequins. In these circumstances, we conclude that the district court did not abuse its discretion in refusing to permit Chase to present evidence that Superior Form's works were copied in their entirety from preexisting work.

■ For similar factual reasons, we also reject Chase's challenge to the district court's instructions on originality. The court correctly stated that because it had found as a matter of law that Superior Form's mannequins were Knight's original works, subject to copyright protection, the jury "need not concern themselves with that matter." And the court further explained that "there is no liability unless it is the original aspects of the plaintiff's work that are copied or taken." The court thus accommodated Chase's claim that he copied only unoriginal aspects of Superior Form's mannequins. We find no reversible error in the court's giving these instructions.

■ Chase also contends that the district court improperly hampered his defense to Standard Form's claim of intentional infringement by excluding evidence that Chase had relied on the advice of counsel in determining that taxidermy mannequins are not copyrightable. While such a contention is remarkably inconsistent with Chase's own efforts to obtain copyright protection for its mannequins and its public statements that its own mannequins were copyrighted, evidence of reliance on the advice of counsel is generally probative of a party's lack of willfulness in infringing a copyright. *See RCA/Ariola, Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir.1988). In this case, however, Chase was not denied the opportunity to present such evidence. At most, the court deferred one effort by Chase to explain what counsel told him. On that occasion, the court directed Chase's counsel to proceed to another area of inquiry, but stated, "[I]f you want to reask it later when we get the jury out for lunch break, you can tell me why [the witness] can say that he never [honored Superior Form's copyrights] because he was of the opinion that it was okay to copy [the mannequins]." Chase never followed up on the court's offer, perhaps for strategic reasons. We find no error in the district court's handling of this matter.

■ In a similar vein, Chase argues that the district court improperly excluded evidence of Chase's reliance on a finding by an Alabama district court that fish mannequins are not copyrightable. The record reveals, however, that the district court only prohibited Chase from interpreting the Alabama court's ruling. The court permitted Chase to testify that after the Alabama case, it was his "understanding that [he] could continue to work off of others' forms." The court also permitted Chase to introduce as an exhibit a copy of the Alabama court's decision. With respect to this matter, we agree with the district court's observation in its memorandum opinion denying Chase's motion for a new trial: "Mr. Chase was given substantial opportunity to explain what the [Alabama] case led him to believe; he simply was not allowed to tell the jury what the case meant objectively as a matter of law."

■ As his final ground for a new trial, Chase contends that the district court's instruction on willful infringement was misleading and prejudicial. The court instructed the jury:

> In general, evidence that notice has been accorded to the defendants before the specific facts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness. It's not the only way that willfulness can be established.

Chase acknowledges that the instruction is an accurate statement of the law, as quoted from *Video Views, Inc. v. Studio 21 Ltd.*, 925 F.2d 1010, 1021 (7th Cir.), *cert. denied,* 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). But he argues nevertheless that "the instruction left the jury with the impression that all [Superior Form] had to prove on the issue of willful infringement was that Chase disregarded [Superior Form] copyright notices." Because Chase offered no modification, alternative, or additional instruction at trial to ameliorate his concern, however, we conclude that the district court did not err in giving the instruction.

## IV

Finally, Chase contends that the award of statutory damages was improper and excessive and that the award of attorneys fees was unjustified. The jury awarded Superior Form $400,000 in statutory damages, the maximum allowable, and the district court awarded Superior Form $74,104.50 in attorneys fees and costs. Chase does not challenge the reasonableness of the amount of the attorneys fees.

Chase argues that the statutory damages must bear some reasonable relationship to the amount of actual damages and "should not amount to a windfall" or punishment. He points out that his gross revenue from the sale of the contested mannequins was roughly $10,200 and that Superior Form was not able to identify any damages caused by his misappropriation. Chase further notes that the $400,000 awarded by the jury is more than double the combined *net* income of Dan Chase Taxidermy for fiscal years 1991 and 1992, which totaled roughly $170,000.

■ The Copyright Act provides that "an infringer of copyright is liable for either . . . actual damages . . . or . . . statutory damages as provided by subsection (c)." 17 U.S.C. § 504(a). And subsection (c) provides:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more that $100,000.

17 U.S.C. § 504(c)(2). Thus, if the jury was presented with evidence justifying a finding of willful infringement, it is given broad discretion to award up to $100,000 for each work copied. Our review of such an award is even more deferential than abuse of discretion. *See Douglas v. Cunningham,* 294 U.S. 207, 210, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935); *Broadcast Music, Inc. v. Star Amusements, Inc.,* 44 F.3d 485, 487 (7th Cir.1995).

■ In this case the jury was properly instructed on its discretionary authority under the Copyright Act. The court told the jury that if it found willfulness, it should determine the appropriate damages by focusing not only on the actual damages suffered by the plaintiffs, but also on:

> any evidence that the defendants have a history of copyright infringement; any evidence that the defendants are apparently impervious to either deterrence or rehabilitation; the extent of the defendant's knowledge of the copyright laws; any misleading or false statements made by the defendants; . . . and any factor which the jury believes evidences the defendants knew, had reason to know, or recklessly disregarded the fact that its conduct constituted copyright infringement.

*See, e.g., F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 234, 73 S.Ct. 222, 226, 97 L.Ed. 276 (1952) (holding that recovery is not limited to gross profit from infringement; court may consider all facts); *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir.1991) (holding that court may consider several factors in awarding damages under copyright Act, including deterrence and circumstances of infringe-

ment). Moreover, the jury was presented with evidence substantially implicating each of those factors.

■ The record supports the conclusion that Dan Chase Taxidermy became the largest taxidermy supplier in the country by consistently and deliberately copying competitors' forms in disregard of the copyright laws. Dan Chase acknowledged, that of the 3,000 molds in his catalog, 150 to 200 were made from competitors' molds. He explained:

> This generally is done in the industry in order to seek out mannequins from different companies. I'm sure our company because of the fact we've worked so hard to produce so many is probably ordered from more than anybody and worked off of them more than anybody.

But in 1989, Chase was sued by Sportsmen On Film, Inc. for copyright infringement. The complaint there alleged that Chase purchased copyrighted tapes from Sportsmen On Film, erased that company's name, substituted the name of Chase Taxidermy, and falsely packaged and labeled the tape with his own copyright notice. At the trial in this case, Dan Chase testified that he had "admitted everything" in the previous case and confessed, "I made a sad error. We paid for it, and that was the end of it."

In 1987, Chase was sued by Jonas Brothers, a taxidermy supply company, for copyright infringement. While Chase settled that case, he was again charged by Jonas Brothers with copyright infringement several years later. Chase has also been accused by at least three other people in the industry of illegally copying their taxidermy mannequins. And Chase is currently being sued in the Northern District of New York by 11 plaintiffs who allege that Chase illegally infringed copyrights on taxidermy mannequins.

Moreover, evidence was presented at trial that Chase has acted in a manner that is inconsistent with his position maintained at trial that taxidermy mannequins are not copyrightable. In earlier versions of his catalogs, Chase represented that "each manikin in this catalog is legally copyrighted according to the law of the United States of America and any infringement will be vigorously

prosecuted." When a judge determined in another litigation that one of Chase's fish forms was not copyrightable, Chase replaced the broad copyright statement from his catalog with the warning, "Beware of look-a-likes," and the explanation that "desperate copycats" are "working overtime in an attempt to deceive the public and violate the rights of others." Even then, however, Chase continued to affix copyright notices to his taxidermy mannequins. When asked why, Chase testified at trial that he did it to "bluff" others so that they would not copy his mannequins.

After Chase acknowledged that he was a member of the National Taxidermy Association, he was asked whether he follows the Association's ethical rule: "I will not cast or reproduce any form or part thereof except my own, sculpted by me or my employee unless I have the specific permission to do so from the originator of the form." Chase testified that he did not consider the rule meaningful and described the Code of Ethics as "whitewash" that was never intended to be followed. The Code was, according to Chase, "passed for show."

Finally, the most telling evidence of willful infringement in this case is Chase's underhanded purchase of the four Superior Form mannequins using pseudonyms, his removal of Superior Form's copyright notice from those forms, and his attachment of his own copyright notice. Such conduct is inconsistent with any claim of innocence or justification. The jury had ample evidence from which to conclude that illegal copying of competitors mannequins was a course of business for Dan Chase Taxidermy and that the maximum statutory damages was suitable.

With respect to attorneys fees, Chase argues that attorneys fees are not to be awarded as a matter of course under 17 U.S.C. § 505. He notes, moreover, that because of the enormous statutory damages, Superior Form has been "more than adequately compensated for any injury or expense incurred." Chase concludes, "the magnitude of [Superior Form's] award is already grossly excessive without further punishing Chase by awarding [attorneys] fees and costs." We conclude,

however, that the district court did not abuse its discretion in the circumstances of this case.

■■■■■■ A court may award costs and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Chase is correct in noting that such awards are not to be made as a matter of course but, rather, as a matter of the court's discretion. *See Fogerty v. Fantasy, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994). In exercising such discretion, we have instructed district courts to consider: (1) the motivation of the parties; (2) the objective reasonableness of the legal and factual positions advanced; (3) the need in particular circumstances to advance considerations of compensation and deterrence; and (4) any other relevant factor presented. *See Rosciszewski v. Arete Assoc., Inc.,* 1 F.3d 225, 234 (4th Cir.1993).

■■■■ Chase maintains that he had a reasonable basis to test the legal question of whether animal mannequins are copyrightable and thus he should not be assessed legal fees for doing so. He points to the district court's assessment that the case "presented legal questions that were novel and complex." We agree that if Chase had pursued these legal issues in good faith, an award of attorneys fees would constitute an abuse of discretion. But the record in this case belies the suggestion that Chase maintained his legal position in good faith.

The record shows that Chase adopted a business practice of copying animal mannequins created by competitors, justifying the practice with the claim that animal mannequins are not copyrightable. As a result of this practice he has been sued repeatedly for copyright infringement. At the same time that he was making the contention that animal mannequins are not copyrightable, however, he was applying for copyrights for his own mannequins, affixing copyright notices to them, and warning others that his mannequins are "legally copyrighted" and "any infringement will be vigorously prosecuted." When one of his fish mannequins was found by a court to be not copyrightable—a decision that he now argues vindicates his contention that animal mannequins are not copy-

rightable—he nevertheless continued to warn the public, "Beware of look-a-likes," and "[D]esperate 'copy cats' [are] working overtime in an attempt to deceive the public and *violate the rights of others.*" (Emphasis added). Moreover, he continued to attach copyright notices to his mannequins to "bluff" others into believing his forms were copyrighted. He admits that he is a member of a trade association that has adopted an ethical code that prohibits copying, but characterizes the code as "whitewash," which was "passed for show."

The district court recognized that it was not required to award attorneys fees to the prevailing party and did so only after carefully considering each of the relevant factors. In this case, it found Chase's conduct "outrageous," and we conclude that the court's finding is amply supported. Under such circumstances, we do not find the district court's award in this case to constitute an abuse of discretion.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*