**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALE HOUSE MANAGEMENT,
INCORPORATED, a Florida corporation,
<u>Plaintiff-Appellant,</u>

v.

No. 99-1175

RALEIGH ALE HOUSE, INCORPORATED,
a North Carolina corporation; JOHN
A. DURANKO, a resident of Florida,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-98-247-5-F)

Argued: January 24, 2000

Decided: March 1, 2000

Before NIEMEYER, Circuit Judge, Deborah K. CHASANOW,
United States District Judge for the District of Maryland,
sitting by designation, and Andre M. DAVIS,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Chasanow and Judge Davis joined.

_____

**COUNSEL**

**ARGUED:** Michael J. Burley, MICHAEL J. BURLEY, P.A.,
Tequesta, Florida, for Appellant. David Ernest Bennett, COATS &

BENNETT, P.L.L.C., Cary, North Carolina, for Appellees. **ON BRIEF:** Larry L. Coats, COATS & BENNETT, P.L.L.C., Cary, North Carolina, for Appellees.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Ale House Management, Inc., an operator of a small chain of facilities selling food and beer in Florida, seeks to enjoin Raleigh Ale House, Inc. from opening a similar type of facility in Raleigh, North Carolina. Ale House Management asserts a proprietary interest in (1) the words "ale house," (2) both the exterior and interior appearances of its facilities, and (3) the copyright of its floor plan drawings. The district court rejected Ale House Management's claims and granted Raleigh Ale House summary judgment. It also awarded Raleigh Ale House attorneys fees. We affirm.

I

Ale House Management, Inc. ("AHM") established its first facility for selling food and beer in 1988 and has successfully expanded by opening other such facilities. By the time this action was commenced, it had opened 21 facilities throughout Florida. Since the early to mid-1990s, each facility has been named after its geographical location plus the words "ale house" (e.g., Orlando Ale House).

The exterior appearances of AHM's facilities are somewhat similar. Each is a rectangular building with a simulated tower, or two, on its roof and a sign on the side designating the facility's name in red block letters. The buildings, however, do not share a common color scheme, size, or shape. The roofs reflect different architectural styles and are constructed of dissimilar materials. Awnings, window sizes, and window shapes vary among the facilities. The exterior materials used to build the facilities vary and include stucco, brick, and siding. The interiors of AHM facilities appear to be more similar, conveying the image of a wood-and-brass decorated pub or pub-style restaurant. The general layout features a central rectangular bar, either as an

2

island or a peninsula, and varying numbers of seats around the bar. Booth seating is located generally on one side of the island or peninsula, and stool seating is located on the other. Numerous television monitors and video games are present, as are pool tables. While the interiors do present a similar general appearance, they are not identical, and virtually all vary in the amount, configuration, and placement of seating, the number of pool tables, and the precise configuration of the bar.

AHM facilities serve both food and alcohol; food accounts for 70% of gross sales, and alcohol constitutes the remaining 30%. The menus are extensive, and more than 20 types of beer are served on tap. Marketing data indicate that customers dining with their families are AHM's most frequent guests.

AHM has plans to expand its chain northward into the states of Georgia, South Carolina, North Carolina, and Virginia, and it has entered into an investment agreement to finance the development of future AHM facilities. As part of its expansion plan, AHM's president visited potential sites in Atlanta, Georgia, and solicited information on possible locations in various cities in the Carolinas, including Raleigh, Charlotte, Myrtle Beach, and Charleston.

Prior to committing to any specific expansion outside of Florida, AHM learned that Raleigh Ale House, Inc. was preparing to open a facility in Raleigh named the "Raleigh Ale House." Raleigh Ale House's facility, which previously housed a Chinese restaurant, is a rectangular building with gray-colored siding and a tower on which "Raleigh Ale House" is painted in red block letters. To design the renovation of the restaurant, Raleigh Ale House hired an architect from Florida, whose offices are located in a county where six AHM facilities are located. The architect's plan for the Raleigh Ale House shows a rectangular island bar, with booth seating on one side, stool seating on the other, and tables and chairs at one end. The plans show five television monitors, two pool tables, and a jukebox.

After Raleigh Ale House had begun advertising for employees but before it opened for business, AHM commenced this action against Raleigh Ale House and its architect, seeking declaratory and injunctive relief, as well as damages, costs, and attorneys fees, for false des-

3

ignation of origin of trade name and trade dress under § 43(a) of the Lanham Trademark Act (the "Lanham Act"), 15 U.S.C. § 1125(a); trade-name infringement, trade-dress infringement, and unfair trade competition under federal common law and North Carolina law; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq. The court granted Raleigh Ale House's motion for summary judgment, adopting Raleigh Ale House's memorandum of law for its opinion. The court thereafter denied AHM's motion for reconsideration based on newly discovered evidence and awarded Raleigh Ale House attorneys fees under both the Lanham Act and the Copyright Act. This appeal followed.

II

At oral argument, AHM focused its argument on its assertion that Raleigh Ale House had appropriated its trade name and trade dress by "deliberately copying" them. While there is no direct evidence of this in the record and little indirect evidence, this pronouncement, even if true, does not itself establish a violation of trademark law. Some proprietary interest is necessary before trademark protection applies. Indeed, even if a party does "copy" a design and "sells" an almost identical product, "this it [may have] every right to do under the federal . . . laws." Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231 (1964). This is so because even intentional copying can benefit the public: "Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all -- and in the free exercise of which the consuming public is deeply interested." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 122 (1938). Accordingly, before considering the significance of AHM's assertions of intentional copying, we must address whether AHM had an exclusive proprietary interest in either the words "ale house" or the trade dress of its facilities.

A

Addressing first AHM's claim to exclusive use of the words "ale house," we begin by noting that AHM has not registered "ale house." Nevertheless, it may still seek protection under the Lanham Act, which also protects unregistered marks. See 15 U.S.C. § 1125(a).

4

To ascertain whether a mark is protected, we must determine whether it is (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. See Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 124 (4th Cir. 1990) (adopting the analytic model advanced by Judge Friendly in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)). A generic mark "refers to the genus or class of which a particular product is a member," and such a mark "can never be protected." Ashley Furniture Indus., Inc. v. Sangiacomo N.A. Ltd., 187 F.3d 363, 369 (4th Cir. 1999). In this case, because Raleigh Ale House suggests that the term "ale house" is generic and AHM has not registered it, AHM bears the burden of establishing that it is not generic. See Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 1156 (7th Cir. 1996).

Acknowledging that "ale house" may be generic in some applications -- such as in reference to a neighborhood English pub -- AHM argues that it is not generic in reference to a facility that serves both food and beer, particularly when it has an extensive food menu. AHM has failed, however, to present any evidence that "ale house" does not refer to institutions that serve both food and beer. What it did provide was evidence that AHM facilities are primarily large restaurants that also serve beer and that food sales generate the majority of their revenue.

On the other hand, Raleigh Ale House presented extensive evidence, including citations to newspapers, dictionaries, books, and other publications, that the term "ale house" is generic, referring to several types of facilities. See Glover v. Ampak, Inc., 74 F.3d 57, 59 (4th Cir. 1996) (endorsing use of similar sources of evidence to establish that a term is generic). This evidence indicates that "ale house" sometimes characterizes facilities that specialize in alcohol. For example, one article refers to "ale houses and brew pubs where an appreciation of beer is learned and passed on," and another restaurant review calls an institution with "ale house" in its name an "unrenovated saloon." Both a dictionary and a book chapter entitled "The Emergence of the Alehouse" refer to an ale house as a place where ale is sold and served. But Raleigh Ale House's evidence also indicates that "ale house" can refer to facilities that serve both food and alcohol. This evidence includes newspaper articles referring to a number of facilities with "ale house" in their names. Indeed, one Internet

5

search revealed well over 100 facilities denominated as "ale houses." Raleigh Ale House presented articles in which "ale house" is used in a general sense (e.g., "my neighborhood grill and ale house") and in the name of facilities that serve food and drink (e.g., the Fish and Ale House is a "freestanding restaurant," Charlie's Ale House is a "bar and eating place," and the Copper Canyon Brewing & Alehouse serves lunch and dinner entrees and provides "interesting beers" and "good food"). Raleigh Ale House also presented Internet restaurant reviews, referring to, for example, an ale house as an "eatery and bar" and a "neighborhood alehouse" that serves food and drinks.

AHM has presented no evidence suggesting that "ale house" is not a generic term that can refer to institutions serving both food and alcohol. Indeed, it conceded at oral argument that other Florida food-and-drink facilities incorporate "ale house" in their names. The fact that the facilities referred to by Raleigh Ale House and the various public data do not offer the same menu as AHM and that some focus more extensively on beer and ale, does not refute the proposition that "ale house" refers to a "genus or class" of facilities that serve both food and drink.

AHM's response to Raleigh Ale House's unrebutted evidence is that it constitutes inadmissible hearsay, an argument that AHM did not assert below. But, to the extent that Raleigh Ale House relied on the fact that "ale house" was used or "listed" in public advertising or other media, the evidence was not presented for its truth but for the fact that it was so listed. See Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by a [testifying] declarant . . . offered in evidence to prove the truth of the matter asserted" (emphasis added)).

In short, we conclude that AHM has no protectable interest in the words "ale house." They are generic words for a facility that serves beer and ale, with or without food, just as are other similar terms such as "bar," "lounge," "pub," "saloon," or "tavern." All serve alcohol alone or both food and alcohol.

B

Although AHM devotes less attention to its trade dress argument, it nevertheless maintains that Raleigh Ale House violated AHM's

6

rights in its trade dress, both as to the exterior and interior appearance of its facilities. At oral argument, however, when AHM was confronted with the observation that the exterior appearances of its various facilities differed significantly in shape, size, style, color, and materials, AHM appeared to abandon its claim with respect to the exterior and to press only its claim that it had a proprietary interest in the appearance of the interior of its facilities, including its service. See Ashley Furniture, 187 F.3d at 370 (recognizing that a restaurant's design and decor may serve as the basis for a trade-dress suit); Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 841 (9th Cir. 1987) (same).

As with generic trade names, the trademark laws do not protect a generic trade dress. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-70 (1992) (upholding as protectable trade dress the distinctive, nonfunctional appearance of a restaurant). Trade dress should be considered generic if "well-known" or "common," "a mere refinement of a commonly-adopted and well-known form of ornamentation," or a "common basic shape or design," even if it has "not before been refined in precisely the same way." Ashley Furniture, 187 F.3d at 371 (internal quotation marks omitted). On the other hand, trade dress is not generic if it is "unique or unusual in the particular field at issue." Id. (internal quotation marks omitted).

AHM produced photographs of both the interiors and exteriors of several of its facilities and copies of its floor plans. It also submitted a photograph of Raleigh Ale House's exterior and a copy of its floor plans. It produced no evidence of Raleigh Ale House's decor, menu, or style of service, presumably because Raleigh Ale House had not yet adopted any. Once the issue of exterior appearance is set aside, a scant record remains upon which to base a claim for a proprietary interior trade dress or trade-dress infringement. There is no evidence that AHM's centrally located rectangular bar with two types of seating on either side and television monitors, arcades, and pool tables, decorated generally in wood and brass, is "unique or unusual." This is particularly so when AHM's own configurations differ from facility to facility, denying it a single model from which to distinguish the numerous similar configurations used by other food-and-beer establishments.

7

Accordingly, we hold that AHM has not advanced sufficient evidence to support its claim to a proprietary interest in the appearance and service it employs in the interior of its facilities. While we would reach the same conclusion with respect to its exterior appearance, AHM apparently is no longer pursuing that claim.

III

AHM also contends that Raleigh Ale House violated AHM's copyright in its floor plans.

At the outset, the parties dispute whether AHM had "registered its copyright before filing an action for copyright infringement," as required. Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 658 (4th Cir. 1993). While the effective date of registration for AHM's floor plans was March 13, 1998, the registration certificate had not been issued before March 26, 1998, when AHM filed its complaint. We need not, however, resolve whether AHM had effective registration because we conclude that AHM has not advanced facts sufficient to withstand summary judgment, even assuming the timing of registration provided no defense.

A copyright is an author's right to prohibit others from copying the author's intellectual invention. The originality of the author's expression is the essence of the proprietary interest. See Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 492 (4th Cir. 1996). Copyright protection does not extend to ideas. See 17 U.S.C. § 102(b); Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984) (in rejecting claim of infringement of architectural plans, the court noted that "[t]he `idea' of a tower structure certainly is not copyrightable. . . . Ideas are not protected by copyright, only expressions of ideas" (citation omitted)). Thus, when an infringer copies an original work, he appropriates that author's proprietary interest in the author's individual expression. See Superior Form Builders, 74 F.3d at 492. To prove copyright infringement, the plaintiff must establish that it owned copyrighted material and that the infringer copied protected elements of it. See Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 361 (1991). A presumption of copying is created by showing that the infringing material is substantially similar to the protected material and that the

8

infringer had access to the protected material. See Towler v. Sayles, 76 F.3d 579, 581-82 (4th Cir. 1996). Access may be shown by demonstrating that the infringer had an opportunity to view or to copy the protected material. But this showing must establish more than a "mere possibility that such an opportunity could have arisen"; it must be "reasonably possible that the paths of the infringer and the infringed work crossed." Id. at 582.

A casual comparison between AHM's various architectural floor plans and Raleigh Ale House's floor plans shows, at most, the imitation of an idea or a concept, but not a copying of the plans themselves. Raleigh Ale House's floor plans are not in the same dimensions or proportions as any of those presented by AHM.

On some of AHM's drawings, the central bar is a peninsula extending from the kitchen area and transecting the rectangular facility across the short dimension. On other drawings, it is an island. On yet others, the central bar runs with the long dimension of the rectangular facility. On each of AHM's drawings, there are variations in the location of the various seating areas and the pool tables. AHM appears to be claiming, not that Raleigh Ale House infringed on a particular plan, but that it copied the concept of using an island- or peninsula-shaped bar to bisect a seating area which has booths on one side and stool seating on the other. But at this level of generality, the AHM design is nothing more than a concept, as distinct from an original form of expression, and is not copyrightable. See Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir. 1992) (defendant failed to show copyright infringement because "although the floor plans are visually similar and the layout is generally the same, the dissimilarities are significant, particularly the roof lines, the bay window and the dimensions. . . . [T]he variety of ways a . . . rectangle can be divided . . . is finite. In architectural plans of this type, modest dissimilarities are more significant than they may be in other types of art works" (citations omitted)); Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984) (rejecting claim of infringement of architectural plans because "substantial design differences" exist and "[o]nly by significantly altering the plaintiff's designs could any similarity be shown"); Nucor Corp. v. Tennessee Forging Steel Service, Inc., 476 F.2d 386, 390 (8th Cir. 1973) ("While the concept of a T-shaped building is not entitled to copyright protection, detailed

9

plans and drawings of a specific building are"); Imperial Homes Corp. v. Lamont, 458 F.2d 895, 899 (5th Cir. 1972) (defendants are not "in anywise restricted by the existence of[plaintiff's] copyright from reproducing a substantially identical residential dwelling . . . [but] if copyrighted architectural drawings of the originator of such plans are imitated or transcribed in whole or in part, infringement occurs").

Even when comparing specific plans, Raleigh Ale House's floor plan is not similar enough to any AHM plan to support a presumption that Raleigh Ale House copied any AHM drawing in violation of the Copyright Act. The closest comparison to Raleigh Ale House's drawing is an AHM floor plan in which the bar island runs with the long dimension of the facility. But in comparing those two plans, the size and proportion of the seating areas are dissimilar, as is the placement of the pool tables. Moreover, the bars in the two drawings have different dimensions and proportions.

In addition, AHM has not presented evidence from which one could infer more than a mere possibility that Raleigh Ale House could have seen AHM's drawings. AHM alleges that Raleigh Ale House's architect had access to its plans because AHM was required to submit copies of them to various building departments in the same county in which Raleigh Ale House's architect conducted his business. But AHM presents no other evidence of access. Against this "mere possibility," Raleigh Ale House's architect has affirmatively denied having ever seen AHM's drawings.

We therefore agree with the district court that AHM has failed to establish a prima facie case of copyright infringement.

IV

AHM argues that the district court abused its discretion in awarding Raleigh Ale House its attorneys fees under § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), and under § 505 of the Copyright Act, 17 U.S.C. § 505.

In awarding attorneys fees, the district court observed that AHM (1) alleged erroneous facts due to reliance on a form complaint; (2)

10

failed to tailor its factual allegations to fit this case; (3) withdrew a federal anti-dilution claim after Raleigh Ale House pointed out its inapplicability; and (4) is a successful company that used its resources to hinder Raleigh Ale House's business venture. Awards of attorneys fees under both the Lanham Act and the Copyright Act are not to be made as a matter of course, but rather as a matter of the court's considered discretion, and we are satisfied that the court did not abuse its discretion in applying the attorneys-fees provisions of either Act to the facts in this case.

Under the Lanham Act, a prevailing defendant may recover attorneys fees in an "exceptional" case, necessitating a showing of "something less than bad faith." Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir. 1992) (quoting Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526 (D.C. Cir. 1985)). Relevant factors include "economic coercion," "groundless argument[s]," and failure to cite controlling law. Noxell, 771 F.2d at 526-27.

We have instructed district courts, when exercising their discretion under the Copyright Act, to consider: "(1) the motivation of the parties; (2) the objective reasonableness of the legal and factual positions advanced; (3) the need in particular circumstances to advance considerations of compensation and deterrence; and (4) any other relevant factor presented." Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 498 (4th Cir. 1996) (citing Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 234 (4th Cir. 1993)).

The rationale given by the district court for its award of attorneys fees supports its exercise of discretion under both the Lanham Act and the Copyright Act. Providing additional support for the court's action under the Copyright Act, AHM initially asserted a claim for copyright infringement occurring in 1988, which it had to withdraw because the statute authorizing the claim was not passed until 1990. Accordingly, we conclude the district court did not abuse its discretion in awarding Raleigh Ale House its attorneys fees.

V

Finally, AHM argues that the district court abused its discretion by denying AHM's motion for reconsideration of its summary judgment

11

based on newly discovered evidence. This evidence included five affi-davits, which AHM characterized as evidence of "actual consumer confusion." The court concluded that all of the affidavits either were not competent as evidence or did not support the proposition for which they were offered. More importantly, however, the affidavits do not bear upon the question of whether AHM's trademark and trade dress are generic.

For the reasons given, the judgment of the district court is

<u>AFFIRMED</u>.

12