**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NATIONAL ASSOCIATION OF
PROFESSIONAL BASEBALL
LEAGUES, INC.,

    Plaintiff-Appellee-Cross-
    Appellant,

v.

VERY MINOR LEAGUES, INC.,

    Defendant-Appellant-Cross-
    Appellee.

No. 99-6007, 99-6008

---

**Appeal from the United States District Court**
**for the W.D. Okla.**
**(D.C. No. CIV-97-1213-R)**

---

James W. Tilly of Tilly & Associates, Tulsa, Oklahoma, for Defendant-Appellant-
Cross-Appellee.

Douglas E. Hart of Frost & Jacobs LLP, Cincinnati, Ohio, for Plaintiff-Appellee-
Cross-Appellant.

---

Before **EBEL, HOLLOWAY,** and **HENRY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

## BACKGROUND

The National Association of Professional Baseball Leagues, Inc. ("Professional Baseball Leagues") owns the trademark "Professional Baseball The Minor Leagues" and its accompanying logo. Very Minor Leagues, Inc. ("Very Minor Leagues") is an Oklahoma corporation that manufactures, markets, and sells baseball caps and t-shirts featuring the names and logos of fictitious baseball teams.[1]

Very Minor Leagues applied to the United States Patent and Trademark Office ("PTO") for registration of the mark "Very Minor Leagues" on June 30, 1994. Very Minor Leagues' application was published for opposition on April 18, 1995. Professional Baseball Leagues filed a Notice of Opposition to Very Minor Leagues's application on August 21, 1995, after being granted two extensions by the PTO. In its Notice of Opposition, Professional Baseball Leagues contended it owned common law trademarks in "The Minor Leagues" and "Minor League Baseball," and that registration of the trademark requested by Very Minor Leagues would create confusion among consumers, tarnish Professional Baseball

---

[1]The fictitious teams are located in actual towns or cities in the United States. The team name is selected so that the name of the town or city combines with the fictitious team name to achieve a humorous effect. For example, Sargent, North Dakota is combined with the team name, Peppers, resulting in the fictitious team "Sargent Peppers." Other examples include the "Pryor Convictions" (Pryor, Montana) and the "Butler Didits" (Butler, Tennessee).

Leagues' marks, and dilute Professional Baseball Leagues' trademark and trademark rights.

On September 15, 1995, Professional Baseball Leagues filed an application to register the trademark "Minor League Baseball" in International Classes 16 (Paper Goods) and 200 (Collective Service Mark.) On the same date, Professional Baseball Leagues filed an application to register the trademark "The Minor Leagues" in several classes, including International Class 25 (Clothing). The assigned examining attorney refused Professional Baseball Leagues' applications to register the marks "Minor League Baseball" and "The Minor Leagues" after determining that the marks were likely to be confused with a mark already registered by Barbara J. Durrell for "Minor Leagues Major Dreams." The examining attorney also noted the pendency of Very Minor Leagues' application, and stated that if Very Minor Leagues' request ripened into a trademark, there would likely be confusion with that mark as well.

In late spring or early summer of 1996, The Hearst Corporation, King Features Syndicates Division ("King Features") contacted Very Minor Leagues regarding the possibility of a licensing agreement between Very Minor Leagues and King. During the course of negotiations, Very Minor Leagues revealed the pending trademark dispute with Professional Baseball Leagues. Counsel for Very Minor Leagues informed Professional Baseball Leagues counsel on June 27, 1996,

that the trademark opposition proceedings were inhibiting culmination of an agreement between Very Minor Leagues and an international company. On June 28, 1996, Very Minor Leagues filed a motion for summary judgment with the Trademark Trial and Appeal Board ("TTAB"), asking that Professional Baseball Leagues' opposition to Very Minor Leagues' mark be dismissed with prejudice. On July 18, 1996, the TTAB entered an order suspending the opposition proceedings pending the outcome of Very Minor Leagues' summary judgment motion. On July 29, 1996, Professional Baseball Leagues filed a motion seeking an extension for its response to the motion by Very Minor Leagues in order to permit discovery. On November 14, 1996, the TTAB granted Professional Baseball Leagues' requested discovery extension.

While Very Minor Leagues' motion for summary judgment in the opposition proceeding remained pending, Professional Baseball Leagues initiated this litigation in the United States District Court for the Middle District of Florida. In its complaint, Professional Baseball Leagues alleged trademark infringement, false designation of origin, trademark dilution, and unfair competition under federal statutes and common law. On April 1, 1997, the TTAB granted a request by Professional Baseball Leagues to suspend the opposition proceedings pending the outcome of the judicial proceedings. The litigation was then transferred to the Western District of Oklahoma in July 1997.

King Features withdrew its offer to enter into any licensing agreement with Very Minor Leagues. Very Minor Leagues alleges this was because of the dispute with Professional Baseball Leagues. As a result, Very Minor Leagues filed counterclaims in the litigation pending in the Western District of Oklahoma against Professional Baseball Leagues for (1) cancellation of the trademark "Professional Baseball The Minor Leagues," (2) tortious interference with a prospective economic advantage, (3) prima facie tort, and (4) abuse of process.

Professional Baseball Leagues filed a motion for partial summary judgment on Very Minor Leagues' second, third, and fourth counterclaims. The district court granted Professional Baseball Leagues' motion, finding the evidence offered by Very Minor Leagues on each of the three counterclaims insufficient to withstand summary judgment. The case then proceeded to trial. At the close of evidence, Very Minor Leagues dismissed its remaining counterclaim for cancellation of Professional Baseball Leagues' registered trademark "Professional Baseball The Minor Leagues." The jury returned a verdict in favor of Very Minor Leagues on Professional Baseball Leagues' trademark infringement, false designation of origin, unfair competition, and trademark dilution claims. Very Minor Leagues filed a motion for attorney fees as the prevailing party, which the district court denied. According to the district court, recovery of attorney fees under 15 U.S.C. § 1117(a) required, for both prevailing plaintiffs and prevailing

defendants, a showing that the other party had acted in bad faith, and Very Minor Leagues had failed to make such a showing.

Very Minor Leagues appeals the district court's order denying it attorney fees and the district court order granting partial summary judgment in favor of Professional Baseball Leagues on Very Minor Leagues' counterclaims for tortious interference with prospective economic advantage, prima facie tort, and abuse of process. Professional Baseball Leagues cross appeals the district court's exclusion of evidence of its trademark use after June 22, 1994, the first date of Very Minor Leagues' use of its trademark.

## DISCUSSION

The district court had original jurisdiction over the trademark claims pursuant to 28 U.S.C. § 1338,[2] and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

---

[2]This section states, in relevant part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a) (1999).

## I. Attorney Fees for Prevailing Defendants Under Section 35(a) of the Lanham Act

A.  Standard of Review

We review a district court's decision on whether to award attorney fees for abuse of discretion, but we review de novo the district court's application of the legal principles underlying that decision.  See Neustrom v. Union Pacific R.R., 156 F.3d 1057, 1067 (10th Cir. 1998).

B.  Merits

In assessing Very Minor Leagues' claim that the district court should have awarded it attorney fees, we are governed by the relevant provision of the Lanham Act.  That provision provides that "[t]he court *in exceptional cases* may award reasonable attorney fees to the prevailing party."  See 15 U.S.C. § 1117(a) (emphasis added).  Thus, being the prevailing party is not, by itself, enough to justify an award of attorney fees.  Moreover, even in exceptional cases, the award of attorney fees is vested in the discretion of the district court.  The statute itself does not define "exceptional cases," but the legislative history to the statute suggests two considerations for prevailing defendants who seek attorney fees.  One, an objective consideration, is whether the suit was "unfounded."  See S. Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133.  The other, a subjective consideration, is whether the suit was brought by the

trademark owner "for harassment and the like." Id. The legislative history further advises that an award of attorney fees to a prevailing party is authorized where "justified by equitable considerations." Id. at 1, reprinted in 1974 U.S.C.C.A.N. 7132. [3]

No one factor is determinative, and an infringement suit could be "exceptional" for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well. The Lanham Act largely vests in the district court the discretion to determine when a losing plaintiff's claims or conduct in the litigation are so "exceptional" as to warrant the assessment of attorney fees. The focus of the analysis is not only on whether the defendant prevailed, or concomitantly, whether the plaintiff lost. Not every losing suit is without foundation, and not every strategic decision by a plaintiff in bringing suit and in prosecuting it in a manner to enhance the prospects of success is done for the purpose of harassment or another improper purpose.

---

[3]The Senate Report states: "[The Act] would authorize award of attorney fees to the prevailing party in trademark litigation where justified by equitable considerations." S. Rep. No. 93-1400, at 1 (1974), reprinted in 1974 U.S.C.C.A.N. 7132.

Although the circuits, in attempting to clarify the "exceptional cases" language in the statute, have developed a variety of criteria for analyzing the propriety of attorney fee awards for prevailing defendants under the Lanham Act, the standards used by many of them ultimately incorporate the same objective and subjective elements that we do. We are disinclined to add additional judicial gloss onto the statutory language. Rather, we think the district courts are quite able to decide which are "exceptional cases," as opposed to routine cases, looking both at the objective merit or the lack thereof of the plaintiff's case and the likely subjective motivations of the plaintiff as reflected by the trial strategies utilized.

Thus, while we do not specifically adopt the approach of any of the other circuits, we note that many of the standards used by other circuits in analyzing the attorney fee issue for prevailing defendants are essentially consistent with our approach. The Eighth and Ninth Circuits, for example, use a standard of whether a plaintiff's claim is "groundless, unreasonable, vexatious, or pursued in bad faith." See Stephen W. Boney, Inc. v. Boney Services, Inc., 127 F.3d 821, 827 (9th Cir. 1997); Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir. 1987). That standard focuses on the same objective and subjective factors we derive from the legislative history. The terms "groundless" and "unreasonable" reflect the objective merits of the case, and emphasize that it is not enough that

the plaintiff does not prevail. Rather, to be an "exceptional" case within the meaning of the statute, the plaintiff's suit must lack any reasonable foundation. The terms "vexatious" and "bad faith" look to the subjective motivation and manner in which the case is prosecuted.

Similarly, the Fourth and D.C. Circuits have looked to factors such as "economic coercion," "groundless arguments," and "failure to cite controlling law." See Ale House Management, Inc. v. Raleigh Ale House, Inc. , 205 F.3d 137, 144 (4th Cir. 2000) (citing Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant , 771 F.2d 521, 526 (D.C. Cir. 1985)). Once again, those factors seem to track the objective and subjective elements in the legislative history. Some circuits point out, we think correctly, that the test should not focus solely on bad faith, but rather should incorporate a broader range of factors. See Door Systems, Inc. v. Pro-Line Door Systems, Inc. , 126 F.3d 1028, 1031 (7th Cir. 1997) (stating that "bad faith is not the correct standard for determining whether to award attorneys' fees to the defendant in a Lanham Act case"); Noxell , 771 F.2d at 526 (stating, in the context of a claim for attorney fees by a prevailing defendant, that "[s]omething less than 'bad faith,' we believe, suffices to mark a case as 'exceptional.'"). But see Conopco, Inc. v. Campbell Soup Co. , 95 F.3d 187, 194 (2d Cir. 1996) (applying bad faith standard for prevailing defendant).

Here, Professional Baseball Leagues argues that the strict "bad faith" standard should apply, and thus Very Minor Leagues, the prevailing defendant, should only be eligible for attorney fees if Professional Baseball Leagues acted in bad faith in bringing its suit. Professional Baseball Leagues' argument is as follows: (1) when the *plaintiff* is the prevailing party, he or she can only get attorney fees when it is proven that the defendant has engaged in acts of infringement in bad faith, see Takecare Corp. v. Takecare of Oklahoma, Inc., 889 F.2d 955, 957 (10th Cir. 1989) (stating, in the context of a prevailing plaintiff's claim for attorney fees, that "[r]unning through the case law, which has developed around a § 1117(a) award of attorney fees, is the implicit recognition that some degree of bad faith fuels the infringement at issue"); (2) the standard for awarding attorney fees should be the same for a prevailing defendant, see Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994) (holding that prevailing plaintiffs and prevailing defendants seeking attorney fees are to be "treated alike").

We agree with Professional Baseball Leagues' first proposition that plaintiffs only get attorney fees when defendant's acts of infringement are in bad faith; however, we disagree that there should be, or even could be, perfect harmony between the standard for awarding attorney fees to a prevailing plaintiff and a prevailing defendant. The underlying conduct under scrutiny is different.

When attorney fees are awarded against a defendant, the court looks to whether the defendant's *acts of infringement* were pursued in bad faith. When attorney fees are awarded against a plaintiff, the court looks to the plaintiff's conduct *in bringing the lawsuit and the manner in which it is prosecuted*.[4]

We recognize that in Fogerty, the Supreme Court, considering the issue of attorney fees under the Copyright Act, held that prevailing plaintiffs and prevailing defendants should be treated alike. See Fogerty, 510 U.S. at 533. Fogerty, however, was a Copyright Act case, not a Lanham Act case, and the Copyright Act gives discretion to the district court to award attorney fees to the "prevailing party" without the further significant limitation found in the Lanham Act that the award be limited to "exceptional cases." Compare 17 U.S.C. § 505, with 15 U.S.C. § 1117(a). In any event, in Fogerty, the Court was concerned with, and disapproved of, a great dichotomy between the standards being used for prevailing defendants and prevailing plaintiffs. Under the Ninth Circuit's "dual"

---

[4]Of necessity, there is not complete transportability between the standard used for prevailing plaintiffs and the standard used for prevailing defendants under the Lanham Act. Courts, guided by the legislative history, have looked to whether the defendant's acts of infringement were "malicious, fraudulent, deliberate or willful" in determining the propriety of attorney fees for prevailing plaintiffs. See S. Rep. No.93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133. Every lawsuit is both "deliberate" and "willful"; therefore, if the same standard were applied for prevailing defendants, attorney fees could be awarded automatically. See Door Systems, Inc., 126 F.3d at 1032 (discussing this point).

standard under review in Fogerty, "prevailing plaintiffs [were] generally awarded attorney's fees as a matter of course, while prevailing defendants [had to] show that the original suit was frivolous or brought in bad faith." Fogerty, 510 U.S. at 520-21. In rejecting the "dual" standard, Fogerty did not specify that the standard for prevailing plaintiffs and prevailing defendants had to be identical; rather it stated that the parties should be "treated alike." The standards to which we subscribe for prevailing plaintiffs and prevailing defendants under the Lanham Act are not identical because we are looking to different kinds of conduct for each party; however, we believe our approach is even-handed and treats plaintiffs and defendants essentially alike for the respective conduct that is at issue. In both cases, the party seeking attorney fees will have to show that the other party acted in an "exceptional" manner, rather than merely in a wrong manner, before attorney fees can be awarded.

The district court here specifically found that Professional Baseball Leagues' claims were not unfounded and we agree. In support of its claims, Professional Baseball Leagues provided some evidence of similarity between its mark and Very Minor Leagues' mark, as well as some evidence of consumer confusion from independent experts, including one expert who testified that he believed it was deceptive to use the words "minor league" in connection with fictional baseball teams. Another expert testified that Very Minor Leagues' use

of "minor leagues" inferred an association or affiliation with Professional Baseball Leagues, and that he was confused about whether Very Minor Leagues' products were licensed by Professional Baseball Leagues. That evidence indicates that Professional Baseball Leagues' suit was not unfounded.

Admittedly, a suit may have some underlying merit and yet be pursued in such a meritless and improper manner that it becomes unfounded, or that subjective considerations of "harassment and the like" may justify an award of attorney fees. That is what Very Minor Leagues argues occurred here. However, Professional Baseball Leagues' filing of the federal lawsuit while the TTAB proceeding was nearing completion does not demonstrate that the judicial suit was unfounded or, as Very Minor Leagues argues, that it was brought only to avoid an unfavorable ruling at the TTAB. There was nothing inappropriate about Professional Baseball Leagues seeking a judicial, rather than administrative, determination of its rights.[5] Similarly, the fact that Professional Baseball Leagues

---

[5]We agree with the district court that General Motors Corp. v. Cadillac Marine & Boat Co., 226 F. Supp. 716 (D. Mich. 1964), is distinguishable. General Motors also involved a situation in which the plaintiff had initially filed an opposition proceeding against the defendant in the TTAB and subsequently filed suit in federal court. The court, using a bad faith standard, ultimately awarded attorneys' fees to the prevailing defendant. In that case, however, there was significant evidence of bad faith, including evidence that General Motors had used its economic power in the past to force capitulation by those attempting to use the term "Cadillac." See General Motors, 226 F. Supp. at 742-44. No such evidence was presented in this case.

originally filed the suit in the Middle District of Florida does not indicate that the suit was brought in an unreasonable manner or to harass Very Minor Leagues. Professional Baseball Leagues' allegation of jurisdiction in Florida was based on the fact that Very Minor Leagues marketed its products in Florida and took and filled orders for its products from customers in Florida. Although the case was ultimately transferred to the Western District of Oklahoma, we cannot say that the initiation of the action in the Middle District of Florida was without jurisdictional basis.[6]

We find that Professional Baseball Leagues' suit was not "unfounded" or brought for "harassment and the like," and therefore we hold that the district court did not abuse its discretion in denying attorney fees to Very Minor Leagues.[7]

## II. Summary Judgment on Very Minor Leagues' Counterclaims

A. Standard of Review

---

[6]Noxell Corp. is therefore distinguishable. In that case, the D.C. Circuit granted attorney fees to a prevailing defendant after finding that the plaintiff's inappropriate choice of venue in the District of Columbia amounted to harassment. The lack of any possible jurisdictional basis was clearly established in Noxell. See Noxell, 771 F.2d at 524. That is not the case here.

[7]The district court also found that Professional Baseball Leagues did not act in bad faith in bringing this suit. We do not find error in that determination.

We review the grant of summary judgment de novo, applying the same standard as the district court. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court.

Id. at 1212.

B. Merits

1. Tortious Interference with a Prospective Economic Advantage

Very Minor Leagues asserted that the actions of Professional Baseball Leagues in opposing the attempt by Very Minor Leagues to register "Very Minor Leagues" as a trademark constituted a tortious interference with Very Minor Leagues' attempt to negotiate a licensing agreement with a third party, King Features. In Brock v. Thompson, the Oklahoma Supreme Court stated in reference to a plaintiff's claim of tortious interference with prospective business relations: "There is no actionable claim if the *interference is lawful* or *does not encompass any unfair or unlawful act*." Brock, 948 P.2d at 293 n.59. The plaintiff in Brock had failed to demonstrate any unlawful or unfair means used by

the defendant; therefore, the court found that it "need not examine in detail the particular elements of this cause of action." Id. at 293. We believe the same rationale applies here.

To be liable for tortious interference with Very Minor Leagues' potential King Features contract, Professional Baseball Leagues had to have knowledge of the prospective economic advantage to Very Minor Leagues. Therefore, the only conduct of Professional Baseball Leagues that could be at issue for this claim is conduct that occurred after June 27, 1996, the date Very Minor Leagues sent Professional Baseball Leagues a letter informing Professional Baseball Leagues of Very Minor Leagues' negotiations with a third party.[8] After that date, Professional Baseball Leagues did the following: (1) On July 29, 1996, Professional Baseball Leagues requested an extension of time in which to respond to Very Minor Leagues' motion for summary judgment in the proceeding at the TTAB, in order to allow discovery to be conducted; and (2) On December 17, 1996, Professional Baseball Leagues filed suit in federal district court in Florida, which case was subsequently transferred to the Western District of Oklahoma.

The request for an extension of time in the TTAB proceeding to conduct discovery to respond to the motion for summary judgment did not involve

---

[8]Nothing in the record suggests that Professional Baseball Leagues would have had any reason to know of negotiations between Very Minor Leagues and King Features prior to this date.

- 17 -

unlawful or unfair means by Professional Baseball Leagues. Very Minor Leagues alleges that Professional Baseball Leagues conducted no discovery and filed no response, and that shows that the extension was sought for an improper purpose. However, even if Professional Baseball Leagues did not conduct any discovery during that period, nothing in the record suggests a causal connection between Professional Baseball Leagues' request and Very Minor Leagues' negotiations with King Features, such that we could conclude that there is an issue as to whether the conduct of Professional Baseball Leagues was unlawful or unfair. Professional Baseball Leagues was within its rights in requesting an extension.

Similarly, filing suit in federal district court was not an unlawful or unfair act by Professional Baseball Leagues. The Restatement (Second) of Torts provides a description of when prosecution of civil suits may be improper:

> Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries. The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.

Restatement (Second) § 767, cmt. c. Very Minor Leagues has not shown that Professional Baseball Leagues' suit was wrongfully instituted. First, Very Minor Leagues has not demonstrated that Professional Baseball Leagues could not have

had a belief in the merit of the litigation. As discussed in the previous section, the evidence indicates that Professional Baseball Leagues' claims were not unfounded. Second, Very Minor Leagues has not presented evidence that Professional Baseball Leagues' act of bringing suit was intended only to harass Very Minor Leagues. The fact that the case was brought in the Middle District of Florida and ultimately transferred to the Western District of Oklahoma does not demonstrate that Professional Baseball Leagues had no basis for believing Florida was a proper place to bring the suit. In support of jurisdiction in Florida, Professional Baseball Leagues had alleged that Very Minor Leagues marketed its products in Florida and had taken and filled orders for its products from customers in Florida.

Therefore, because we find no genuine issue of material fact suggesting that the conduct of Professional Baseball Leagues was unlawful or unfair, Very Minor Leagues has no actionable claim of tortious interference with a prospective economic advantage.

2. Prima Facie Tort

Very Minor Leagues also asserted a counterclaim against Professional Baseball Leagues for prima facie tort.[9] To prove a prima facie tort claim, Very

---

[9]"This broad theory of tort liability has been adopted in only a handful of states, including Oklahoma." Merrick v. Northern Natural Gas Co., 911 F.2d 426,

(continued...)

- 19 -

Minor Leagues had to establish that Professional Baseball Leagues' conduct was "generally culpable and not justified under the circumstances." Restatement (Second) at § 870. Our finding that the lawsuit brought by Professional Baseball Leagues was not unfounded or brought for harassment, and that Very Minor Leagues failed to show that Professional Baseball Leagues' actions were unlawful or unfair demonstrates that Very Minor Leagues cannot succeed in its prima facie tort claim. Very Minor Leagues offers no additional evidence to show that Professional Baseball Leagues' actions were generally culpable or unjustified. Summary judgment on this claim was therefore appropriate.

3. Abuse of Process

Very Minor Leagues alleged that Professional Baseball Leagues committed abuse of process by "willfully causing the issuance of process with the ulterior purpose of protracting the opposition proceedings and delaying the ultimate decision on the issues presented therein, the effect of which was to prevent Very Minor Leagues from entering into marketing and licensing agreements with third parties." Very Minor Leagues added that "[t]he undue delay caused by Professional Baseball Leagues' actions was not proper in the regular conduct of

[9](...continued)
433 (10th Cir. 1990) (citing Cressman, The Prima Facie Tort Doctrine in Oklahoma: Common Law Protection of Business From Unjustified Interference, 56 Okla. B.J. 1759, 1759 (1985)).

either proceeding," and that "[a]s a result of [Professional Baseball Leagues'] conduct, Very Minor Leagues has been damaged in an amount to be proven at trial."

"The elements of abuse of process are (1) the improper use of the court's process (2) *primarily* for an ulterior purpose (3) with resulting damage to the plaintiff asserting the misuse." Bank of Oklahoma, N.A. v. Portis, 942 P.2d 249, 255 (Okla. Ct. App. 1997). As previously discussed, the actions of Professional Baseball Leagues in requesting an extension before the TTAB and in filing this lawsuit were not improper, and Very Minor Leagues has offered no evidence showing Professional Baseball Leagues' acts were for an ulterior purpose. In regard to arguments by Very Minor Leagues that Professional Baseball Leagues filed suit to avoid a determination by the TTAB on Professional Baseball Leagues' opposition to Very Minor Leagues' trademark application, we find no error in the district court's findings that Professional Baseball Leagues was "well within its rights" in filing the lawsuit against Professional Baseball Leagues, and that it could not "infer ill motive from [Professional Baseball Leagues'] decision to proceed in a judicial forum." Moreover, Very Minor Leagues has provided no evidence of damage that resulted from the acts of Professional Baseball Leagues.

There is no genuine of issue of material fact remaining on Very Minor Leagues' counterclaim for abuse of process; therefore, summary judgment was appropriate.

### III. Exclusion of Evidence of Professional Baseball Leagues' Trademark Use After June 22, 1994

A. Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion. See FDIC v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir. 1994). An abuse of discretion will be found only when the trial court makes "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Id.

B. Merits

In connection with its claim of common law ownership of the trademarks "The Minor Leagues" and "Minor League Baseball," Professional Baseball Leagues sought to introduce evidence of its prior use of those trademarks.[10] Very Minor Leagues filed a motion in limine to exclude evidence of Professional Baseball Leagues' use of those marks after June 22, 1994, the date Very Minor Leagues first adopted and used the "Very Minor Leagues" mark. The district

---

[10]At trial, Professional Baseball Leagues argued that the terms "The Minor League" and "Minor League Baseball" were not generic and were deserving of protection under the Lanham Act, based on the secondary meaning that existed connecting the terms with Professional Baseball Leagues.

court granted the motion by Very Minor Leagues, but later permitted Professional Baseball Leagues to introduce evidence of third parties' use of the terms "The Minor Leagues" and "Minor League Baseball" after June 22, 1994, to show recognition of the secondary meaning alleged by Professional Baseball Leagues.

Professional Baseball Leagues argues that the district court's ruling was "one-sided" and deprived it of a full opportunity to introduce evidence to counteract Very Minor Leagues' claim that "minor league" was a generic term. We disagree. We believe the evidence Professional Baseball Leagues presented of its own use of the marks "Minor League Baseball" and "The Minor Leagues" prior to June 22, 1994, and the evidence it presented of third parties' use of the marks after June 22, 1994, was sufficient to challenge the assertions by Very Minor Leagues that the term "minor league" was generic.

In any event, under the deferential standard of review that we apply to evidentiary rulings, we hold that the district court did not abuse its discretion in granting the motion in limine.

AFFIRMED.