F I L E D
United States Court of Appeals
Tenth Circuit

FEB 15 2002

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEFFREY J. BROWN and TRACY
BROWN,

     Plaintiffs-Appellants,

v.

DAN E. BUTLER and KATHERINE
BUTLER,

     Defendants-Appellees.

Nos. 00-6304, 01-6170
(D.C. No. 99-CV-1343-M)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and
**McWILLIAMS**, Senior Circuit Judge.

These two appeals were separately briefed. No. 00-6304 was orally argued and

No. 01-6170, per agreement of counsel and the court, was submitted on the briefs. Both

appeals will be treated in this order and judgment.

No. 00-6304

The two cases have their genesis in an automobile accident on September 20,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

1996, wherein a motor vehicle traveling pre-dawn on a country road in Oklahoma was driven into a herd of cattle and struck a 400-pound calf. The automobile was being driven by Jeffrey J. Brown, a resident of Kansas, and the herd of cattle was owned by Dr. Dan E. Butler and his wife, Katherine Butler, residents of Oklahoma.

Based on that accident, Jeffrey Brown and his wife, Tracy Brown, brought an action in the United States District Court for the Western District of Oklahoma against both Dan and Katherine Butler. The matter in controversy was alleged to be in excess of $75,000.00 and jurisdiction was based on 28 U.S.C. § 1332. The Browns alleged in their complaint that the Butlers owned pasture land adjacent to the road where Jeffrey Brown struck the herd of cattle which belonged to the Butlers. The complaint went on to state that the defendants were negligent in having "failed to keep their pasture land properly fenced, thus allowing their livestock to escape the pasture and travel into the public roadway, specifically Purdue Road." As the proximate result of the Butlers' negligence, Jeffrey Brown alleged that he had suffered permanent injuries[1] and a loss of earnings, and Tracy Brown alleged that she had suffered a loss of consortium, and the like, all in excess of $75,000.00, and sought damages in excess of that sum, and also sought punitive damages in excess of $75,000.00.

---

[1]Jeffrey Brown had a container filled with carbon disulfide used in oil well operations in his vehicle at the time of this accident. As a result of the impact with the Butlers' herd, the carbon disulfide was "spilled" and Brown, who was allegedly rendered unconscious in the accident for some 23 minutes, sought damages for the injuries resulting from his inhalation of the carbon disulfide fumes.

By answer, the Butlers denied any negligence on their part and affirmatively alleged that if either of them was in some degree negligent, Jeffrey Brown's own negligence exceeded theirs.

Prior to trial, the district court denied the Butlers' motion for summary judgment, concluding that there were genuine issues of material fact that required submission to a jury. Butlers' motion to reconsider that matter was denied. Trial by jury ensued. The jury's verdict was in favor of the Butlers, the jury finding that they "were not negligent." Judgment in favor of the Butlers was duly entered. The Browns appeal that judgment. We affirm.

The Browns' basic argument on appeal is that the district judge was "prejudiced" against them, and their case, that such prejudice was demonstrated by several adverse rulings of the district judge in connection with evidence proffered by their counsel, and that the cumulative effect thereof was a "miscarriage of justice."[2] As a lead-in to that argument, counsel notes that in denying the Butlers' motion for a directed verdict at the conclusion of the plaintiffs' case, the district judge characterized the plaintiffs' case as being "arguably thin." Such does not demonstrate judicial prejudice. In view of the jury's verdict, the case was "arguably thin." In any event, so far as we can tell from the record before us, this statement was not made by the judge in the jury's presence.

_____

[2]Counsel makes no claim that the jury's verdict is contrary to the weight of the evidence or that the evidence does not support the jury's verdict.

As indicated, to show that the district judge was not impartial, counsel relies, in part, on the district judge's exclusion of certain pictures and a videotape[3] of the "water gap" in the wire fence that enclosed the Butlers' pasture, the "water gap" being the place where the herd apparently escaped the pasture. In this connection we note that numerous other pictures of the "water gap" were allowed into evidence. Also, counsel asserts that the district judge's partiality was shown by her refusal to allow counsel to cross-examine a state trooper, who investigated the accident and was called as a defense witness, as to whether, in his opinion, the Butlers were guilty of gross negligence, or "unreasonable conduct."[4] Finally, prejudice of the district judge was also demonstrated, according to counsel, by the fact that the district judge refused to allow counsel at trial to introduce evidence which would conceivably be probative on the issue of punitive damages. In this regard, the issue of punitive damages was not submitted to the jury, and, of course, the jury's verdict was "no negligence" on the part of the Butlers.

Be that as it may, the various matters urged in support of the Browns' basic claim that the district judge did not act in an impartial manner, viewed singularly or collectively, do not indicate prejudice or bias on the part of the trial judge. In her numerous

---

[3]The videotape is narrated by a person who tells the viewer of the videotape what he or she is seeing. From the record, we are not certain of the identity of the narrator, or who took the video, although, in each instance, it would appear to be Jeffrey Brown.

[4]It appears that the trooper testified as a lay witness, not as an expert witness. The opinion of a lay witness is generally limited by Fed.R.Evid. 701. Counsel also notes the district judge's rulings limiting the cross-examination of Katherine Butler.

evidentiary rulings, the district judge did not abuse her discretion, or otherwise indicate personal bias or prejudice. In *National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.,* 223 F.3d 1143, 1152 (10th Cir. 2000), we said that an abuse of discretion in connection with evidentiary rulings would be found only when the trial court makes "an arbitrary, capricious, whimsical or manifestly unreasonable judgment." In our view, the district judge was neither "arbitrary, capricious, [or] whimsical." Nor did she manifest "unreasonable judgment." Bias or prejudice has not been shown.

Counsel for the Browns also complains that the district judge acted improperly, showing "prejudice," when she forced counsel to proceed with closing argument on short notice and limited counsel to only 15 minutes in his closing argument to the jury. Trial of this case commenced on Monday, July 24, 2000, and it was the intent of all concerned that the trial would end on the following Monday, July 31, 2000. Counsel for the Butlers had informed opposing counsel, and the court, that they had an expert witness who would not be available until the 31st. However, on Friday, July 28, 2000, counsel for the Butlers advised all of a change in plans and that they no longer intended to call the witness in question. Whereupon the district judge advised all that she proposed to conclude the trial on that day, the 28th, and only give the instructions to the jury on Monday, the 31st. Counsel for the Browns indicated that he was displeased with that proposed change in schedule and preferred to argue his case to the jury on Monday morning rather than on Friday afternoon, and that he should be allowed more than 15 minutes to argue. The

court did not go along with that suggestion and the trial proper was concluded on Friday afternoon, with, as stated, counsel on each side being limited to 15 minutes in closing argument.  Counsel cites no authority in support of his suggestion that we should reverse the district judge's judgment and remand for a "new and fairer trial," presumably before a different judge, because  he was not allowed to argue, in closing argument, more than 15 minutes.  A trial court's control over the trial process is reviewed under an abuse of discretion standard and "a district court has broad discretion in limiting the scope of closing arguments." *United States v. Rogers,* 960 F.2d 1501, 1513 (10th Cir. 1992). We find no abuse of discretion.  Further, as counsel's closing arguments are not in the record on appeal, we are unable to conclude the Browns were prejudiced as a result of their counsel having insufficient time to prepare for closing argument.  *See Scott v. Hern,* 216 F.3d 897, 917 (10th Cir. 2000).

    Judgment affirmed.[5]

---

[5]On June 11, 2001, the Browns filed a "Motion to Refile Opening Brief Appendix."  The motion was granted on the same date.  On July 2, 2001, the Butlers filed a "Motion Requesting Permission to Respond to Contents of Appellants' Opening Brief Appendix and Appellees' Request for Affirmative Relief."  In connection with this last matter, the Butlers sought leave of court to file a supplemental response brief.  On July 6, 2001, the Browns filed their objection to Butlers' request to file an additional brief.  On December 4, 2001, the Butlers filed a letter asking for "clarification" of their motion to file a supplemental brief.  On December 27, 2001, the Butlers filed a motion requesting "clarification" of its letter sent the court on December 4, 2001.  On January 4, 2002, the Browns filed a response to the Butlers' motion to clarify.  All of the matters, save and except the Browns' "Motion to Refile Opening Brief Appendix,"which had already been granted, were referred for consideration and disposition to "the panel assigned to dispose of the case on the merits."  This panel now denies the Butlers' motion of July 2, 2001,

As indicated, the jury in the underlying case returned a verdict in favor of the defendants, and a judgment in favor of the defendants was duly entered. Thereafter counsel for the defendants filed a bill of costs in which they sought an award of $33,856.84. The bill was supported by a very detailed itemization as to the nature and amount of the monies sought. The plaintiffs filed an objection to the defendants' bill of costs and asserted that defendants only had "recoverable costs" in the amount of $3,077.17. The clerk of court held a hearing on the matter and then granted the costs in the amount of $3,044.99.

Thereafter, counsel for the defendants filed with the district court a "motion for expert witness fees and travel expenses." That motion asked for the following: (1) expert witness fees for Drs. Reitz and Edwards, each of whom testified at trial as defense witnesses concerning the alleged physical injury sustained by Jeffrey Brown when he inhaled the toxic fumes; (2) the cost of obtaining a transcript of testimony given at the trial by Jeffrey Brown and used by counsel in the conference on jury instructions; (3) travel expenses to Dallas, Texas, for defense counsel to attend the taking of a deposition by Dr. Rea, plaintiffs' expert witness; and (4) "Plaintiffs' Portion of Examination of William Greaves, M.D." In connection with this last matter, counsel, in his motion, spoke as follows:

---

requesting, *inter alia,* leave of court to file a supplemental response brief.

The parties took the discovery deposition of Dr. Greaves in Milwaukee, Wisconsin on June 13, 2000. According to the billing attached to Schedule "B," line 3, to the Bill of Costs, Mr. Grider deposed Dr. Greaves for eight (8) hours at $340 per hour, plus a 15% Medical College administrative assessment, for a total cost of $3,128.00. Mr. Grider agreed that the plaintiffs are responsible for this portion of the billing by Dr. Greaves. The defendants seek an Order to that effect to avoid misunderstandings.

Plaintiffs thereafter filed objections to defendants' motion for expert witness fees and travel expenses, objecting to <u>any</u> additional costs being taxed. The district court eventually ordered expert witness fees in a total amount of $4,925.00 for Drs. Reitz and Edwards and in an amount of $3,120.00 for Dr. Greaves, the latter sum representing that portion of Dr. Greaves' "expert time" resulting from counsel's eight-hour examination of Dr. Greaves upon deposition, which amount, according to Butlers' counsel, Browns' counsel had agreed to pay. The other requests, i.e., reimbursement for the cost of having Mr. Brown's testimony transcribed and for travel costs incurred by counsel in connection with Dr. Rea's deposition, were denied. By his notice of appeal, counsel appeals the district court's award of costs to the defendants "over and above those set by the Court Clerk of the Western District of Oklahoma."

Fed.R.Civ.P. 54(d) reads as follows:

> (d) Costs; Attorneys' Fees
>     (1) Costs other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the

court otherwise directs . . . ."

In granting the Butlers' request that the Browns pay an expert witness fee to both Dr. Reitz and Dr. Edwards, the district court relied on *United States v. City of Twin Falls, Idaho,* 806 F.2d 862, 876-9 (9th Cir. 1986)("*Twin Falls*"). On appeal, opposing counsel argues that *Twin Falls* is the exception to the general rule that the "prevailing party" is not entitled to recover from the "losing party" an expert witness fee for his own expert witnesses who testified at trial. Counsel suggests that the present case does not come within *Twin Falls* since the expert witnesses' testimony in the present case related to Jeffrey Brown's alleged injuries resulting from his inhalation of toxic chemicals, and the cause thereof, and that the jury never reached that question since they found "no negligence" on the part of the Butlers. In other words, counsel in this court concedes that the district court in its discretion could award the Butlers' expert witness fees for Dr. Reitz and Dr. Edwards who testified at trial, but contends that the district court abused such discretion because, and only because, the jury by finding "no negligence" never reached the question of whether Jeffrey Brown sustained injuries from the collision of his vehicle with Butler's cow and inhaled fumes from the spilled carbon disulfide container. This, of course, is pure hindsight. At the time Drs. Reitz and Edwards testified, it was not known that the jury would find "no negligence," and if the jury had found that the Butlers were negligent, then Jeffrey Brown's claimed injury resulting from his inhalation of toxic substances would have been crucial, and in connection therewith the testimony of Drs.

Reitz and Edwards would have been most germane. In this regard, the district court found that the testimony of Drs. Reitz and Edwards was "essential in establishing the defense against Brown's claim that he suffered injury as a result of the September 20, 1996, incident."

Although the argument that the district court erred in awarding the Butlers expert witness fees for their two expert witnesses, Drs. Reitz and Edwards, solely because the jury, by its finding of no negligence on the part of the Butlers, never reached the question of Jeffrey Brown's alleged physical injuries and the cause thereof, borders on the specious, we are nonetheless concerned with the broader question, which we cannot ignore, of whether the district court had the authority to award expert witness fees for either Dr. Reitz or Dr. Edwards. As indicated, in making such award the district court relied on the reasoning of the Ninth Circuit in *Twin Falls.* In this connection, we note that the Ninth Circuit in *Association of Flight Attendants v. Horizon Air Indus., Inc.,* 976 F.2d 541, 551-52 (9th Cir. 1992) ("*Flight Attendants*") stated that the Supreme Court had "effectively overruled" *Twin Falls* in *Crawford Fitting Co. v. J. T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987) ("*Crawford*"). In *Flight Attendants* the Ninth Circuit said that the Supreme Court in *Crawford* held that "a federal court may tax expert witness fees in excess of the [] limit set out in § 1821(b) only when the witness is court appointed." *Flight Attendants*, 976 F.2d at 552. Drs. Reitz and Edwards were not court appointed, but retained by the Butlers and testified on their behalf at trial.

28 U.S.C. § 1920 provides as follows:

§ 1920.  Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:
. . . . .
(3) Fees and disbursements for printing and witnesses.

28 U.S.C. § 1821 provides as follows:

§ 1821.  Per diem and mileage generally; subsistence

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
. . .

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

In considering the relationship between § 1920 and § 1821 and Rule 54(d), the

Supreme Court in *Crawford* spoke as follows:

We think that the inescapable effect of these sections in combination is that a federal court may tax expert witness fees in excess of the $30-per-day limit set out in § 1821(b) only when the witness is court-appointed.  The discretion granted by Rule 54(d) is not a power to evade this specific congressional

- 11 -

command. Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920.

*Crawford,* 482 U.S. at 442.

In *Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1292 ("*Chaparral*") we followed the mandate of *Crawford* and spoke as follows:

> Because federal procedural law governs the taxation of costs, any discretion afforded the trial court would arise under federal law, namely Fed.R.Civ.P. 54(d), and not under state law. That discretion is constrained by 28 U.S.C. §§ 1821 and 1920. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 107 S.Ct. at 2498-99. <u>In the absence of an explicit statutory authorization, a trial court has no discretion under Fed.R.Civ.P. 54(d) to tax the actual costs of expert witness fees.</u> *Id.* (Emphasis added.)

We find no "explicit statutory authorization" to the contrary, and in accord with *Crawford* and *Chaparral* we conclude that the district court erred in awarding to the Butlers $4,925.00 representing expert witness fees for Drs. Reitz and Edwards.

In granting the Butlers' request that the Browns pay a portion of Dr. Greaves' "expert time" spent in connection with the deposition requested by the Browns' counsel wherein the latter examined Dr. Greaves for some eight hours, we find no abuse of discretion by the district court. Fed.R.Civ.P 26 (b)(4)(A) provides as follows:

> A party may depose any person who has been identified as an expert whose opinions <u>may</u> be presented at trial. (Emphasis added.)

In this same general connection, Fed.R.Civ.P. 26(b)(4)(C) provides as follows:

> "[U]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a

reasonable fee for time spent in responding to discovery under
this subdivision . . . ."

We see no "manifest injustice" in requiring the Browns to pay a portion of Dr. Greaves' "expert time" spent during the Browns' extended (eight hours) interrogation of Dr. Greaves at the deposition requested by the Browns. Counsel's argument that since Dr. Greaves did not actually testify at trial, such somehow excuses the Browns from payment of at least a portion of Dr. Greaves' "expert time," also borders on the specious. The fact that Dr. Greaves was not called as a witness at the trial does not change the result. Fed.R.Civ.P. 26(b)(4)(A) authorizes a deposition of "any person . . . who may be presented at trial. (Emphasis added.) And Fed.R.Civ.P. 26(b)(4)(C) states that "unless manifest injustice would result . . . the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery."

The award of expert witness fees for Drs. Reitz and Edwards is reversed and that matter is remanded to the district court with directions that it award Drs. Reitz and Edwards witness fees in accord with 28 U.S.C. § 1821(b). The award of the expert witness fee for Dr. Greaves is affirmed.

ENTERED FOR THE COURT


Robert H. McWilliams
Senior Circuit Judge


- 13 -